KATE BRADY, Administratrix, *vs.* NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

PROVIDENCE—JANUARY 5, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

A., having been for a considerable time employed as a laborer by the defendant, was directed to remove snow from its station platforms and track crossings; while he and another were so engaged on a platform between two tracks, a locomotive and tender passed down one of the tracks to a switch and returned on the other, and A., working with his back toward the engine, was struck by it and fatally injured. He and the workmen with him had been cautioned that day to look out and take care of themselves. At, or just before, the moment of the accident the engine bell was rung and a fellow workman shouted

to A., who, instead of moving from, turned towards, the track, where he was struck :—

*Held*, that the defendant had performed all the legal duty it owed to A.

*Held*, further, that A., from his previous employment, must have known the dangers incident to the service, and, in view of the caution given him, had no right to rely on another to look out for him.

*Held*, further, that A. was guilty of contributory negligence in working with his back toward the track and so near to it that the passing engine could strike him.

At the trial of an action by the administratrix of A. to recover damages for causing his death, the court, on the facts stated, directed a nonsuit :—

*Held*, that the negligence of plaintiff's intestate was so clearly shown that no verdict against the defendant could be allowed to stand, and hence the nonsuit was properly granted.

TRESPASS ON THE CASE for negligence. Heard on the plaintiff's petition for a new trial.

TILLINGHAST, J.   At the time of the accident in question, the plaintiff's intestate, Thomas McGrail, was employed by the defendant in and about its freight houses in the city of Providence, as a general laborer. He had been in the employ of the defendant in the same capacity for a considerable time. On the 19th of February, 1896, he, together with several other employees of the defendant, was directed to remove the snow from the platforms and crossings in the immediate vicinity of the passenger station in said city. The men were in charge of one Thurber, the boss or "railroad policeman," as he was called, who distributed them along the platforms and crossings in gangs of two or three, beginning at the north end of the station and working down towards the south end. At the time of the accident two of the men, plaintiff's intestate and another, were at work on the platform between two tracks opposite to the south end of the station platform, and separated from it by a track. The platform where they were working was known as the "express platform," and was from twelve to fifteen feet wide and seventy to eighty feet long. While plaintiff's intestate was working here, a locomotive and tender passed down one of the tracks alongside the platform to the switch near by, and thence immediately back again on the other side of said platform, near to the edge of which plaintiff's intestate

was working with his back towards the locomotive as it approached him. He was struck by the engine and mortally injured. One of his fellow workmen who was some distance away, seeing the dangerous position in which he was working, shouted to him, but instead of turning from the track, he turned towards it, and was instantly struck by the engine. Said Thurber cautioned the men before they went to work that morning to look out and take care of themselves. The evidence shows that locomotives and trains of cars were almost constantly passing and repassing the various platforms where the men were at work; that the bells of the locomotives were rung and the whistles frequently blown, and that the bell on the locomotive which struck the plaintiff's intestate was rung immediately before, if not at the very instant when he was struck. There is no evidence that the locomotive was running at an unusual or dangerous rate of speed at the time of the accident.

The case was tried in the Common Pleas Division, and, after the plaintiff's evidence was put in, the court, on motion of the defendant, directed a nonsuit. It is now before us on a petition for new trial, on the ground of alleged error of the court in granting the nonsuit.

The main contention of the plaintiff is that, taking into account the nature of the employment, which was such that the men could not keep a constant outlook for approaching trains and at the same time attend to their work, it was the duty of the defendant to warn them of danger. And, specifically, the claim is that the defendant owed to plaintiff's intestate the duty of warning him of the approach of its train, (1) through said Thurber, who was in charge of the gang and placed the men in the position where he wanted them to work; and (2) through the engineer, who had charge and control of the engine.

We fail to see that the defendant owed any legal duty to the plaintiff's intestate which it did not perform. Having been employed for some time in and around the freight house of a great railroad, the deceased must have been aware of the dangers incident to the service and needed no special warn-

ing relative thereto.   The evidence shows, however, that he was especially cautioned, before commencing the work afore-said, to look out for himself ; and this being so, he had no right to rely on the boss or any other person to look out for him. He knew that engines and trains of cars were liable to pass along where he was at work at any moment ; and in fact the proof shows that they were passing back and forth nearly "every other minute," as stated by one of the plaintiff's witnesses, alongside the platforms on which the men were at work, with all the accompanying noise from the ringing of bells and blowing of whistles which is incident to a busy rail-road station, especially at that hour of the day when the accident happened, viz., between seven and eight o'clock in the morning.   It is evident that the boss could not personally have looked out for the men, as they were divided into small groups or "gangs," as the counsel denominates them, of two or three each, and were thus separated and scattered along the extensive platforms at various points ; so that it became *necessary* for each man to look out for himself.   And while it is true that they could not give their undivided attention to their work in such circumstances, as argued by plaintiff's counsel, still this was not their fault, as they could only be required, and evidently only were required under the order of their boss, to do what they could *and look out for them-selves*.   As to the contention of plaintiff that the engineer did not give the usual warning by ringing the bell, we do not think it is tenable under the proof.   The witness John Coffey testifies that the bell was ringing when the engine was going down towards the switch, that is, just previous to the acci-dent ; that it immediately came back on the other side of the platform, where plaintiff's intestate was ; that he noticed it about two seconds before it struck McGrail, and that witness, who was in the neighborhood of one hundred feet distant, did not hear the approach of the engine.   But, in answer to the question, "Did you hear any bell or any whistle," he replied, "Yes, sir."   In cross-examination the following questions were asked : "You knew it went down to the switch and backed up ?"   Ans.   "Yes, sir."   Q.   "And it was ringing

the bell, was it not, when going along?" Ans. "Yes, sir." The witness Glancy, in answer to the question whether he heard any bell or whistle, says, "No, sir. I didn't pass any notice, there were so many passing up and down. I didn't really notice any one more than the other." But even conceding that the bell was not rung immediately before the accident, and that the defendant owed it to plaintiff's intestate to give him notice of the approach of the engine by such a signal, or in some other manner, yet it is clear that he was guilty of contributory negligence in working as he did, with his back towards the track and so near thereto that an approaching engine would strike him. He evidently took no precaution whatever for his own safety, although expressly charged to look out for himself, but on the contrary, although knowing that engines and trains were constantly passing to and fro, and knowing, also, as he must have known, that neither the boss nor any one else was then present to look out for him, he suffered himself to become oblivious to his dangerous situation, and thereby most unfortunately lost his life. Such negligence, however sad the result may be, is wholly inexcusable from a legal standpoint, and precludes any recovery.

The case of *Chicago, St. L. & P. R. R.* v. *Gross*, 133 Ill. 37, cited by plaintiff's counsel in support of his contention that the defendant owed the duty to the intestate of warning him of the approach of the engine, is quite different from the one at bar. There the plaintiff's intestate, while engaged in taking up old rails and replacing them with new, was struck by one of defendant's engines and mortally injured. There was a dispute as to whether intestate had timely warning of the approach of the train. There was evidence, however, that the boss of the gang with which deceased was working repeatedly informed the men that they should pay no attention to trains but go on with their work. And it was held that it was proper in that case to submit the question of contributory negligence to the jury. It will at once be seen that in that case the plaintiff's intestate had the right to rely on the boss to warn him of the approaching train.

The late case of *Felice* v. *N. Y. Cen. & H. R. R. R. Co.*, 43 N. Y. Sup. 922, is more nearly in point as an authority in support of plaintiff's position; but the facts are so different that it is readily distinguishable from the case at bar.   There the plaintiff was working with a gang of men in a tunnel, a long way from the entrance, so that no daylight could penetrate from the entrance, and the only means for lighting the tunnel were the few torches with which the men were furnished to throw light upon the ditches where they were at work.   While they were digging, a train came from the south, of which they had notice, and they left their work for the purpose of getting out of the way of that train.   As that train was passing, a light engine, running backwards, came from the north.   This engine was not perceived until it was almost upon the men, and Felice, not being able to get out of the way, was struck by it and killed.   The evidence showed that, while the smoke and steam from the engine of the northbound train had filled the tunnel so that it was almost impossible to distinguish objects through the dim light given by the torches, and the tunnel was filled with the noise and rattle of the train, a light engine, running at the rate of fifteen miles an hour, came down upon the other track, running backwards as aforesaid, with no light upon the rear of the tender, and giving as a warning only the ringing of the bell.   In view of these facts the court held that the jury were justified in finding that sufficient warning was not given of the approach of the engine to enable plaintiff's intestate to get out of its way, and refused to set aside the verdict which had been rendered in favor of the plaintiff.   It is true that in that case, as in this, the men were warned to look out for themselves.   But the effect of such a warning in a case like that, where it was practically impossible for a man to protect himself, is very different from what it is in a case like the one before us, where the plaintiff's intestate had only to use his senses in the ordinary way to do so.   We think the case at bar is one in which the negligence of plaintiff's intestate is so clearly shown, by the testimony for the plaintiff alone,

that no verdict in his favor could be allowed to stand, and hence that the nonsuit was rightly granted.

Petition denied, and case remitted to the Common Pleas Division with direction to enter judgment for the defendant for costs.

*Walter B. Vincent*, for plaintiff.

*James M. Ripley*, *Henry W. Hayes* and *John Henshaw*, for defendant.